Case number 241723, Gregory Tucker v. Noah Nagy. Argument not to exceed 15 minutes per side. Mr. Schultz, you may proceed for the appellant. Morning. Morning, your honors. May it please the court. Assistant Attorney General Jared Schultz on behalf of the respondent. I'd like to reserve three minutes for rebuttal. Okay. This case demonstrates why standards of review matter. Two exceedingly deferential standards govern here. The due process principles outlined by Jackson v. Virginia and the strict limitations on habeas review imposed by AEDPA. Both demand that a federal court recognize that reasonable people might evaluate evidence differently. But so long as any juror acting reasonably can find proof beyond a reasonable doubt, a state court's decision rejecting a sufficiency claim was within the realm of fair-minded disagreement, habeas relief is unavailable. The district court did not adhere to those standards. It flouted Jackson in favor of its own view of the evidence and it completely disregarded the strict limitations on habeas review with the text and the interpretations by the Supreme Court of that statute. Simply put, a reasonable person could could view the petitioner's DNA found on the the coke bottle at the scene of the crime which could have only been left by the perpetrator himself with sufficient proof of guilt. And a rational judges could defer to that decision. The district court's decision granting habeas relief should therefore be reversed. Now there's... Do you think DNA and fingerprint evidence are roughly the same in this area? Are they different? Should we think about them the same way? Because a lot of the precedents are fingerprint precedents. Sure, you know, I think it's different based on these specific facts because of where the DNA was found on the lip, the rim area of the coke bottle. You know, it might be different if there's fingerprints found on the coke bottle itself because you buy a coke bottle you could have the clerk handing you the coke bottle. There's... that might be a different story. But here we have DNA found on the lip bottle which, you know, a reasonable person can could absolutely assume that... find that that means that the person who left the DNA also drank from the coke bottle. So I think it is a little bit different than fingerprint evidence in that sense. You know, I think there's there's several reasons why the district court erred here. But I want to point to three specific aspects. The first is, and kind of most glaringly, is that it developed a specific legal rule from circuit court precedent, from out-of-circuit cases, that's found nowhere in Supreme Court precedent. ADPA says that you have to... the text of ADPA says you cannot grant habeas relief unless the state court's decision was contrary or an unreasonable application of clearly established federal law as determined by the Supreme Court. The Supreme Court in turn has said that that means that there must be a holding of the Supreme Court. Jackson is a general standard. That's the only Supreme Court opinion that was cited here. Viewing the evidence in light most favorable to the prosecution, could any rational juror find proof beyond a reasonable doubt? Nowhere does it say that if you have forensic evidence found on an easily movable object at the scene of the crime, that you cannot in and of itself have sufficient evidence in that case. That's a specific legal rule. Again, Jackson's a general standard. It gives state courts leeway on how to apply evidence to that general standard. Could a state court... Yes, Your Honor. I was just wondering, I think I know one part of this and I'm not sure about the other. I don't think a reviewing court can hold it against the criminal defendant that he didn't testify and provide an alibi defense. I'm pretty confident that's not a legitimate inquiry. Sure. Is it a legitimate inquiry that the defendant did not put on other witnesses or other evidence going to alibi? Is that a legitimate inquiry by the reviewing court? Yes. I think it would depend. All that matters is whether the prosecutor's theory is proved beyond a reasonable doubt. I think you can say that there's no other evidence there that's part of the inquiry. I don't think that's the whole inquiry or can be the whole inquiry in a sufficiency case. And you know, that's kind of what the district court said was, well, the state court or I believe my brother counsel said that, well, the state court kind of held the petitioner to reverse the burden, put it on the burden to show that he was innocent. That's not what the state court did. What the petitioner did at the state appellate court level was say, hey look, there are all these other reasons that show why I'm innocent. That shows that the prosecutor didn't meet its burden. All the state court was doing was responding to that argument, saying, well listen, these don't apply, these arguments don't make sense, and by the way, we still have sufficient evidence based on the affirmative facts adduced in the trial. The state court said that right in its opinion, that a reasonable person could view the evidence and say that there is proof beyond a reasonable doubt. What is or what was or is the state's view on why this burglar had a Coke bottle? I mean, just I'm trying to understand why a burglar would bring a Coke that he's drinking to these burglary scenes. It seems like he would be using his hands otherwise. Sure, I don't know that there is a specific theory that the prosecutor set forth at trial other than that was his Coke bottle and he brought it to the scene. And I think that's the... No doubt that it couldn't have been, did the scene not have a refrigerator? There's nothing, that's not in the evidence, no. But what is in the evidence is that the shop owner testified that that Coke bottle was not there the day before. It was not there when she locked up and then it was there when she came back, opened the shop and there was thousands of dollars worth of items missing. Does it make any difference if there was other DNA on that bottle? I think it goes to the weight, sure. You know, it might weigh a little differently if there was no other DNA on the evidence. But there was so little DNA from the minor donor that the DNA analysts could not even come do any comparisons or contractions or conclusions from that evidence. I think it is fair that a reasonable juror could say because the petitioner here left the majority of the DNA, he was the last person to drink from the Coke bottle. And then that's what this case is all about, is whether... DNA both from, I don't remember, both from where you drink or was some of the DNA in other parts of the... What I understand is that it was one DNA sample taken from the rim of the bottle and that came to... That had a little of... Correct, correct. But again, the DNA analyst testified that she couldn't even do anything with the minor donor to compare or contrast, even if she had had something to compare it to. Whereas the major donor, she could affirmatively say that it was Mr. Tucker's DNA. Even with all the... Given the population statistics and everything like that. Counsel, the Third Circuit decision, Trevelyan, you know, an AEDPA case, correct? Yes, Trevelyan was. It had both levels of deference and seems like pretty similar. I guess I'm just curious, would your position be we or the district court should not have looked at Trevelyan at all because it's an out-of-circuit case, or it's not persuasive, or both? I think it can look at it, sure. I don't think it's persuasive for two reasons. First, I don't think it did a very good job of recognizing the AEDPA standard of review and how deferential it is. Second, I don't think the facts are analogous. On surface level, sure, easily movable object brought to the scene. However, in Trevelyan, the evidence showed that the object at issue, the manila folder and the papers, were used as a way to disguise that he had a gun, to hide that he had a gun. It was only when those were set down, the folder was set down, that the victim saw that there was a gun. That's different than the facts here. There is no evidence suggesting that the Coke bottle was used to do anything at the scene of the crime, which, to a reasonable person, a common-sense inference is that, okay, well, then it must have been used by the perpetrator to drink from. Why else would the perpetrator bring it to the scene of the crime? Whether every rational juror would find that or would say, well, there could be other innocent explanations, that doesn't matter. A common-sense inference from that, what a reasonable person could find, is that that means that the person who left the DNA was the person at the scene who drank from the Coke bottle. Does the record show how close he is to getting out anyway? I'm trying to figure it out. I'm just doing the math in my head. So he's actually out now. He's on parole now. But is that because of Judge Lawson's decision? Correct. I was trying to figure out where his sentence would be otherwise, because it's, what, 9 to 15 years? I'm just, and I figure you have good credit, good time credits. Anyway, if you don't... Yeah, he had a few, I believe he had a few more years left on his minimum. I could be wrong on that, but he is on parole right now because of the state complied with Judge Lawson's decision. So I guess I just, one other aspect I'll talk about, and I kind of alluded to it already, is the district court seemed to justify its decision by pointing to all these other common-sense, or sorry, excuse me, not common-sense, alternative innocent explanations that it believes showed that the petitioner was innocent. But that's not part of the Jackson analysis. Jackson analysis says you have to view the evidence in the light most favorable to the prosecutor. A prosecutor does not have any duty to rule out alternative innocent theories. Essentially what the district court did here was say, act as a 13th juror and try to convince another fact finder, hey look, there are other reasons why the DNA evidence could be there. Most of those reasons would require you to disbelieve the shop owner's testimony, which again, that's not part of a Jackson analysis. A reasonable, you could believe, viewing the evidence in light most favorable to the prosecutor, you can believe the shop owner's testimony that the coke bottle was not there the night before. She locks up, it was there when she comes back. Accepting that as true, there's not many other reasonable alternative theories of innocence, but even if there were, that's not part of the Jackson theory, or the Jackson analysis, so long as the prosecutor proves its theory beyond a reasonable doubt. I see my time is up. Thank you. Thank you. Good morning. Good morning, your honors. Matt Monahan, assistant federal defender on behalf of Mr. Tucker. May it please this court. This is an exceptional case, your honors. We're looking at a breaking and entering, and the only evidence that ties Mr. Tucker is a DNA hit on an object left at the scene. We don't know anything else about even the DNA hit. Cell type, quantity, really where it was swabbed from. We know mouth part. We don't know if that bottle was capped or uncapped, filled or empty. All we know in the timeline of events from about 5 p.m. Friday to 5 a.m. Saturday, that bottle ended up there, and that bottle had his DNA on it. We don't have evidence as to timing, which is the key gap, and all the cases that look at Jackson challenges in similarly situated cases speak to the timing as the essential piece of evidence that the state has to produce in order to get 12 jurors to beyond a reasonable doubt, to a place of near certitude. Where the state court goes wrong, and why the district court is right to grant the writ here, is two reasons. One, just on DNA, I mean, what goes up goes down, what can exonerate, can inculpate, and that's how I see this case. I mean, if the issue was someone else had been convicted for this breaking and entering, right, in the course of post-conviction, someone stumbles upon the coke bottle and realizes it's got someone else's DNA, and it's everything else is the same. It wasn't there before, it wasn't there after. I just think everyone would say, we can't leave that conviction for the other fellow, and so I just feel like this goes in both, I mean, I realize it doesn't, it's not symmetry. I get, I do appreciate that point, that that's not how we do this, but boy, under AEDPA and the fact that Jackson is a really general standard, you know, it's not like I'm comfortable with this, but I do see it as DNA can be really great and really, really bad. The power of DNA evidence to a jury is where I think the jury goes astray here, because what makes this DNA case different than those exoneration cases is more evidence. You've got, you've got reporting from the DNA analyst, analyst, pardon me, about quantity, about cell type. You have it in incriminating locations, in sexual assault cases or in murder cases. You have DNA plus. You have DNA that may put the right perpetrator at the scene at the right time. You have some cell type, whether it's blood or semen, which is incriminating given the facts of those case, those cases. What I think the jury did here is take that really common sense, that attractive view of DNA as this powerful indicator of guilt and overweight it given what else was missing here. And it's because of what else is missing that makes this DNA case look a lot like the fingerprint cases, where you just have an indicator of identity. But just help me, if you don't know this, don't worry about it, but you seem like the kind of guy that would know it, which is a compliment. I know it's a forbidden inquiry to say, why didn't he just take the stand and say, I was at this bar watching a game. I know that's a forbidden, but is it forbidden that he didn't put on any evidence from anyone else, like anything, like I was in a different state, or is that also a forbidden inquiry? On a Jackson sufficiency inquiry, yes it is. Because Jackson is looking only at the state's burden. Jackson says, you look at the elements, you look at, in this case, it'd be the breaking, the entering, the intent. Did they come forward with the basket of evidence on each element that gets to guilt? Now, could a state... You could say, as your friend said, there's no other evidence as to where he was. There's no other, you can't say that. When I... No, couldn't a reviewing court say, there's no other evidence about where the defendant was, how this got there, and the question is whether that meets the burden. I see what you're saying. Does it meet the burden under Jackson? No. Is it a forbidden inquiry in that it can never come in? I don't think this court needs to get all the way to forbidden inquiry to recognize an unreasonable application of Jackson here, because you've got two problems. There's the focus, there's the repeated emphasis on the implausibility of innocence, tied to this rational support finding, where the evidence rationally supports the guilt. That's the place, both of those places, but especially that latter one, where the state court goes off the rails on Jackson. This doesn't ration... This, meaning the solitary DNA hit, doesn't support this verdict because of the missing timing piece, but also because of other missing components. There's nothing that connects him to this store. But there's sort of a timing piece that isn't missing, which is, if you believe the store owner, which the jury was entitled to do, that Coke bottle with his DNA on it wasn't there when she left, and it was there when she came back, and the place had been trashed. That's right, Your Honor, and where the timing goes, where my focus is on timing, and I think the habeas relief is proper, is the timing of when the DNA hit the bottle. The jury had good reasons, good facts in the record to infer. We know the maintenance man didn't leave it. When she arrives that morning at 5 a.m., there's trash all over the place, and the bag is gone. So the maintenance man didn't come and leave, take the trash, and then whoever broke in comes later. The trash is still there. And she says the place has been just ransacked. So no one comes, I think it's a reasonable inference, no one comes after the break-in. She leaves at 4.30 p.m., she arrives at 5 a.m. We know the Coke bottle got there. We know no one else got there, I think, based on reasonable inferencing, but we still don't know when Mr. Tucker's DNA ended up on that bottle. We also don't know how or why Mr. Tucker would have been in that building. There's nothing in the state's case that gets him there. Counsel, these are excellent arguments. I thought your brief put forth a really good case for a court that was looking at this on direct review. I kind of wanted to go back to your phrase, off the rails, which is an interesting way to think of the unreasonable application test. And what I'm struggling with is, how did the state court go off the rails? Let's say I'm convinced in many ways by your arguments that you're making, but that I'm really seeing the train is just kind of slowing or stopping, but staying on the rails, right? Right. Knowing that it's double deference, knowing that we're on a habeas case here, it's the two-fold problem. It's not a case. Someone who breaks and enters never has an obligation to come and present a defense of any kind, let alone an airtight one. So for the state courts to be thinking about the alternative theories, here is an unreasonable application of Jackson, and it doesn't need to be forbidden or not. It's just Jackson doesn't focus on the defense case. Don't we typically, looking back on my days 100 years ago as a district court judge, don't we typically tell jurors, and then we on review agree, that jurors are entitled to bring with them their own common sense and life experience? Couldn't this juror, at least under Jackson, couldn't one of them have looked at all of this and said, you know what didn't happen here? Somebody, not this guy, found this Coke bottle and said, you know what I'm going to do? I'm going to take this Coke bottle in with me while I break into this salon here and leave it so that nobody will think it's me. Right, this is sort of, I think it goes in part to the state's point about the use, like why else would this bottle be in there, if not from the perpetrator bringing it. So I think that even that one jury would be irrational, especially in a state like Michigan. You bring your common sense, you bring your experience in Michigan. Those bottles are worth 10 cents in Michigan. They're currency. They are. And somebody could be picking through the trash, picking through wherever, pull that bottle up and never having themselves, excuse me, whoever drank the bottle leaves their DNA on it and they just bring it with them wherever they go. Their business model was twofold, breaking and entering, redeeming. This is like the Seinfeld episode. I love this. It's a side hustle. Yes. I want to ask you if you share my instincts about this. So I'm going to give you different things you could leave behind. So I would agree, I think you and I would agree that if it was a crowbar, that's more problematic because it's related to the breaking and entering. It gets you in. Yep. So that would not be good. Glove, slightly problematic because you might wear gloves for fingerprint issues. So that would probably be in a – that might be enough to convict is what I'm thinking. And then hat, which has nothing to do with breaking and entering, and Coke bottle. And so I'm struggling with why – I mean, it does help that it's an item that you would associate with breaking and entering, so that's why we're in agreement there. But the problem is they both have the fellow's DNA on it. So I think this is the Bonner case with the hat. And that's a direct review case, and I think, Judge, that speaks to the difference in deference, and I think that's where I want to go with this point. The Bonner case, they find this Yankee hat. It's in a dumpster. It's behind a store. There's just been a robbery. Very soon after, the police pull over an SUV matching the getaway car, and they find Mr. Bonner's ID and wallet in the getaway car. They find Mr. Bonner's DNA on the hat. Now, on direct review, the court said that wasn't enough evidence. But I would think on a habeas case, that would get you where you're getting at, Judge Sutton, which is you've got other facts that speak to was that person in that Subway restaurant or were they in that restaurant. They've got a connection to the getaway vehicle through a girlfriend. They've got their ID in the getaway vehicle and their hats in the dumpster behind the place after somebody just robbed it wearing that hat. So, you know, I think it always speaks to just how contextual these sufficiency cases are and how rare this one is. You don't have any of that extra factual information that helps you make the inference as to Mr. Tucker beyond sort of why would someone bring a Coke bottle into a robbery? But that question ultimately goes to what little the state has here. We don't have anything to answer that question. All you had was video. This is a video thing. But the only thing the video just it's a small thing. So the video just shows that he was inside the building during the relevant time. If there's video evidence putting him. There's nothing else. All you have is the fact that it shows he's there and it shows he goes in. But it doesn't show anything about breaking entering. It doesn't show him leaving. It's just zero except for the fact the video shows he was there at the relevant time. You my instinct is you're going to say that's different in a way that helps the government, which I would share that. Yes, but I'm struggling because it reminds me of this, you know, Scalia. No, it's a dissent. This helps you. But it's a case where the only evidence was his face. And I'm just like, what do you mean the only evidence that it doesn't get any better? Right. Well, it does. DNA. I mean, DNA is the best. Like the only the only evidence they had was DNA is not normally I would agree anymore. Normally, I would agree that you we it's just it speaks to just how fact specific it's not. They have DNA in the way that we think about it, where there's a pool of blood or there's a recognizable amount of fluid or a sizable quantity of touch DNA. We just don't know how big that sample was. We know that the minor contributor sample was so small it was tough to pull a hit of any kind from it. We also know from the DNA analyst that she could pull something usable from even the smallest quantities. So if there is inferences that we can make about the DNA here, it's that there isn't much. And we know he is the major contributor. We know that. But it's a way of saying that even within DNA cases, the more these hit the courts and the more these happen, there's a lot of variation to how powerful DNA evidence is. And this is a case where it doesn't answer the identity question because there's so much else missing, both about the DNA and about Mr. Tucker and his connection to this building, this salon, this crime. Your point isn't that you're challenging whether it was his DNA. That's correct, Judge. It's his DNA. Okay. Yes. So I'm trying to figure out why it matters that there isn't very much of it. I think it's because it's hard to say without much of it. Well, two reasons. Timing. The longer DNA stays on a movable object, the more it may decay, the more it may fall off, which would speak to how long ago the DNA was put on. The other way is we don't know that this is saliva. We don't know that he drank from it. If we're talking about a smaller quantity of DNA, we're talking more likely about touch DNA. Grabbed a bottle at one point, put it somewhere else. So we just don't know that this is a bottle that he drank from. So that's why the quantity matters. It just tells us even less about identity, excuse me, about when that DNA hit the bottle. I see my time is up, Your Honors. Thank you. Thank you, Mr. Monahan. Mr. Schultz. I'll be very brief. Brother Counsel keeps saying that the only evidence was DNA evidence here. That's not true. We also have the shop owner's testimony about when the Coke bottle arrived on the scene. It wasn't there before the break-in. It was there when she opened back up again. Even the district court said that a reasonable inference from that evidence is that the person who broke in on her and stole all the stuff was the person who left the Coke bottle. It's only reasonable inference from there to say that the person who left the DNA on the Coke bottle was the person drinking from the Coke bottle at the scene of the crime. And I'll just really end with, it doesn't matter whether I believe Mr. Tucker was innocent, whether Brother Counsel does, whether Your Honors do. What matters is whether a reasonable person could find guilt beyond a reasonable doubt based on the evidence here. And really whether a state court could defer to that judgment. Because that's the case here. I think the grant was wrong and this court should reverse. I'm happy to answer any more questions that this court has. I think we're good. Thank you. Thanks to both of you for very strong briefs. But I just got to say, both of your oral arguments were just terrific. I really enjoyed them. Really great. It's great for your clients, great for us. So terrific. Thank you very much. The case will be submitted and the clerk may call the last case.